DETERMINED IN

# THE SUPREME COURT

OF

# OREGON.

Argued June 23, decided July 8, 1913.

## KELLY v. LEWIS INV. CO.*

(133 Pac. 826.)

**Carriers—Passengers—Elevators—Actions—Evidence.**

1. While negligence will not be presumed, except in cases of mischief done in accordance with the generic propensities of the animal committing it, yet, an averment of negligence need not necessarily be substantiated by direct testimony, but may be inferred from the circumstances; and hence where an elevator controlled by defendant fell several stories and was stopped with a sharp jerk, negligence may be inferred by the jury on the theory of *res ipsa loquitur*.

   [Presumption of negligence from the happening of an accident is the subject of a note in 113 Am. St. Rep. 986; presumption of the exercise of care is the subject of a note in 116 Am. St. Rep. 108.]

**Witnesses—Examination of Witnesses—Scope of Cross-examination.**

2. Under Section 860, L. O. L., permitting cross-examination of a witness as to any matter stated in his direct examination, the engineer of the defendant, in charge of the machinery in the building where the elevator fell, having been directly examined as to the result of an inspection subsequent to the accident, may be cross-examined as to inspections prior to the accident.

**Appeal and Error—Review—Harmless Error.**

3. In an action against defendant for injuries to plaintiff owing to the fall of defendant's elevator, the improper cross-examination

---

*On the question of the liability of owner of elevator for injury to trespassers of licenses, see note in 15 L. R. A. (N. S.) 402 and 27 L. R. A. (N. S.) 124.    REPORTER.

of defendant's engineer as to inspections prior to the accident is harmless, where the engineer testified that the elevator was in good order.

### Carriers—Passengers—Elevators.

4. A landlord who maintains an elevator for the benefit of his tenants in the building and their guests, while not a common carrier, is a carrier for hire, and as such is bound to exercise the highest degree of care practicable.

[Liability of the proprietor of an elevator for injuries to persons other than passengers is the subject of a note in Ann. Cas. 1912D, 531.]

### Trial—Instructions—Contradictory Instructions.

5. The objection to inconsistent and contradictory instructions is that it cannot usually be determined from the verdict what ruling as given by the court below was adopted.

### Appeal and Error—Review—Harmless Error.

6. In an action against the owner of a building for injuries received by plaintiff owing to the fall of an elevator, the giving of an instruction that defendant was bound to exercise the same care that a prudent person would have exercised under the circumstances, though inconsistent with the instruction which announced the correct rule that defendant was bound to exercise the highest degree of care practicable, is harmless to defendant, tending to bind him to a lesser degree of care than that which was required.

### Appeal and Error—Carriers—Passengers—Elevators—Evidence—Sufficiency.

7. In an action against the owner of a building for damages for injuries received by plaintiff by the fall of an elevator, evidence *held* sufficient to support the verdict for plaintiff, so that it could not be interfered with on appeal, in view of Article VII, Section 3, of the Constitution, as amended (see Laws 1911, p. 7), providing that no fact tried by a jury shall be otherwise re-examined in any court, unless the court can say affirmatively that there is no evidence to support the verdict.

From Multnomah: WILLIAM L. BRADSHAW, Judge.

Statement by MR. JUSTICE MOORE.

This is an action by Elizabeth Kelly against the Lewis Investment Company to recover damages for a personal injury. The complaint charged in effect that the defendant is a corporation; that it owns in Portland, Oregon, a 10-story building, having on each floor rooms which it leases, and for the accommodation of its tenants and persons dealing with or calling

upon them it maintains and operates a passenger elevator; that on August 8, 1911, the plaintiff was employed by one of such tenants, and with others occupied a room in that building on the sixth floor, where she entered the elevator; that the defendant so negligently operated the car that it dropped nearly four stories when it suddenly stopped, in consequence of which she sustained severe internal injuries, particularly describing them, to her damage in the sum of $20,000.

The answer denied the negligence and the extent of the injuries complained of, admitted the other averments of the plaintiff's primary pleading, and for a further defense alleged that the accident referred to was unavoidable.

The reply controverted the averments of new matter in the answer, and the cause, having been tried, resulted in a verdict and judgment for the plaintiff in the sum of $7,500, and the defendant appeals.

AFFIRMED.

For appellant there was a brief over the names of *Messrs. Wilbur, Spencer & Dibble,* with an oral argument by *Mr. Ralph W. Wilbur.*

For respondent there was a brief over the names of *Messrs. Davis & Farrell,* with an oral argument by *Mr. Wilfred E. Farrell.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. It is contended that an error was committed in refusing to grant a judgment of nonsuit. It is insisted by plaintiff's counsel, however, that sufficient evidence of the cause and extent of the injury and of the circumstances legitimately indicating the origin

of the hurt was received to entitle their client to an application of the maxim *res ipsa loquitur,* which legal precept afforded adequate proof of the want of due care, thereby authorizing the jury to deduce the conclusion from· such *prima facie* case that the harm complained of was caused by the defendant's negligence, and requiring such party, if it would escape the consequence of resulting judgment, to offer proof controverting the legitimate deduction which the jury were entitled to make from the facts proved. It is a rule of law, except in cases of mischief done in accordance with the generic propensities of the animal committing it, that negligence will not be presumed: 1 Thomp. Neg., § 853. An averment of negligence, however, need not necessarily be substantiated by direct testimony, but may be made out of circumstantial evidence from the production of which proof carelessness may be inferred. Thus where, from the relation of the parties and the manner of the accident, it appears that an instrumentality causing an injury was at the time controlled by the defendant, and that the casualty was such as in the usual course of events would not have occurred if those who managed the thing had used proper care, evidence of the injury and of the incidents accompanying and tending to produce the hurt inferentially shows that the accident arose from the want of requisite care. That is, by establishing a condition of surrounding and limiting circumstances whose existence forms an antecedent from which the principal fact of negligence may be deduced sufficient to create a *prima facie* case, requiring the defendant, who evidently had a better opportunity to know the cause of the harm, if he would avoid an adverse judgment based on such state of the case, to offer evidence tending to overcome the deduction which the reason of the jury makes from

the facts and circumstances so established: *Esberg Cigar Co.* v. *Portland,* 34 Or. 282, 302 (55 Pac. 961, 75 Am. St. Rep. 651, 43 L. R. A. 435); *Boyd* v. *Portland Electric Co.,* 40 Or. 126, 131 (66 Pac. 576, 57 L. R. A. 619); *Boyd* v. *Portland Electric Co.,* 41 Or. 336, 342 (68 Pac. 810); *Chaperson* v. *Portland Elec. Co.,* 41 Or. 39, 45 (67 Pac. 928); *Goss* v. *Northern Pac. Co.,* 48 Or. 439, 441 (87 Pac. 149).

Guided by this rule, the testimony given by the plaintiff and her witnesses respecting the cause of the injury will be reviewed. The plaintiff stated upon oath that August 8, 1911, she was employed by one of the defendant's tenants, who occupied rooms on the sixth floor of its building; that about 5:30 P. M. of that day she, at that floor, entered the passenger elevator; that the car immediately shot down at a terrific speed and suddenly stopped. Other testimony offered by her witnesses tended to show that the elevator rapidly descended from the sixth floor to about six feet below the third floor, where the car was suddenly stopped by the safety appliance. F. M. Lemont, who at the time was in the elevator, testified that the car stopped as suddenly as if it had struck the bottom of the shaft. Charles Klapper, who was also on the car at the time of the accident, testified that the elevator descended so rapidly that the governor, regulating the automatic safety attachment, caused a clutch to grapple the guides, and immediately to shut off the power. This witness, referring to the speed of the car, said: ''It was running too fast. The sensation was the same as though one were falling, to me; just simply took the breath out of me.'' The foregoing includes the substance of the testimony that was introduced on this branch of the case at the time the motion for nonsuit was interposed. From such sworn declarations the jury might have reasonably inferred

that the defendant negligently operated the elevator, for as was said in a similar case by Mr. Chief Justice PHILLIPS in *Deposit Co.* v. *Sollitt,* 172 Ill. 222 (50 N. E. 178, 64 Am. St. Rep. 35): "The fact of the falling of the elevator is evidence tending to show want of care in its management by the operator or its servants, or that the same was out of repair or faultily constructed." No error was committed in denying the motion.

2, 3. A. E. Worth, as defendant's witness, testified that at the time of the accident he was the engineer in charge of the machinery in the building, that the day after the injury the elevator was run as usual, and that on the following Sunday he examined the car and found that none of its parts were broken. On cross-examination he was permitted, over objection and exception, to testify as follows:

"Q. You inspected it (the car) the Sunday before (the accident)?

"A. Yes, sir.

"Q. There was nothing wrong with the car?

"A. Nothing wrong with the car."

It is asserted by defendant's counsel that in allowing the witness to testify in respect to the condition of the car prior to the injury, when he had spoken in chief of an examination of the elevator after the accident, an error was committed. The statute permits an adverse party to cross-examine a witness as to any matter stated in his direct examination or connected therewith: L. O. L., § 860. The cross-examination complained of related to matters connected with the direct examination of the witness. Aside from this, his answer on cross-examination was not prejudicial to the defendant, and no error was committed as alleged.

4. It is insisted that the court erred in charging the jury, over exception, as follows: "Now the degree of

care required of one who maintains and operates a passenger elevator in a building into which the public is invited to come and make use of such elevator for the usual purposes is the highest degree of skill and foresight consistent with the efficient use and operation of said elevator. He is bound to use the utmost skill and care in the choice and maintenance of machinery and appliances. He is not an insurer of the safety of his passengers, but he is liable for the slightest negligence which is the proximate cause of an injury to a passenger." A landlord who in leasing a building or a room therein agrees, in consideration of the payment of the rent reserved, to carry in a passenger elevator to and from various floors the lessee and also the persons who deal with and visit him, is not in the strict sense of the term a common carrier of passengers, because he does not engage to transport the public generally, but only a small part thereof. He is, however, a carrier of passengers for hire; the rent paid by the tenant being the compensation for which the landlord undertakes safely to carry him and his visitors by the elevator: 10 Am. & Eng. Law (2 ed.), 946.

In a few instances it has been held that the owner of a building in operating therein an elevator was not required to exercise the highest degree of care, and was only bound to use the care demanded of an ordinarily prudent person under the circumstances: *Burgess* v. *Stone,* 134 Mich. 204 (96 N. W. 29); *Griffen* v. *Manice,* 166 N. Y. 188 (59 N. E. 925, 82 Am. St. Rep. 630, 52 L. R. A. 922); *Edwards* v. *Manufacturers' Bldg. Co.,* 27 R. I. 248 (61 Atl. 646, 114 Am. St. Rep. 37, 8 Ann. Cas. 974, 2 L. R. A. (N. S.) 744). By the great weight of authority, however, it has been determined that a landlord who for a consideration stipulates to maintain and operate for the accommodation of his tenants and their visitors a passenger elevator

into which the public are impliedly invited to enter and be carried to desired floors is subject to the highest degree of skill and foresight consistent with the efficient use and operation of the means of conveyance, the same as is imposed by law upon public carriers of passengers: Hutchinson, Carriers (3 ed.), § 100; 1 Thompson, Neg., § 1078; *Sweeden* v. *Atkinson Imp. Co.*, 93 Ark. 397 (125 S. W. 439, 27 L. R. A. (N. S.) 124); *Treadwell* v. *Whittier,* 80 Cal. 574 (22 Pac. 266, 13 Am St. Rep. 175, 5 L. R. A. 498); *Deposit Co.* v. *Sollitt,* 172 Ill. 222 (50 N. E. 178, 64 Am. St. Rep. 35); *Springer* v. *Ford,* 189 Ill. 430 (59 N. E. 953, 82 Am. St. Rep. 464, 52 L. R. A. 930); *Ohio Valley Trust Co.* v. *Wernke,* 42 Ind. App. 326 (84 N. E. 999); *Cubbage* v. *Estate of Youngerman* (Iowa), 134 N. W. 1074; *Kentucky Hotel Co.* v. *Camp,* 97 Ky. 424 (30 S. W. 1010); *Goodsell* v. *Taylor,* 41 Minn. 207 (42 N. W. 873, 16 Am. St. Rep. 700, 4 L. R. A. 673); *Lee* v. *Publishers: Knapp & Co.,* 155 Mo. 610 (56 S. W. 458); *Becker* v. *Lincoln R. E. & Bldg. Co.,* 174 Mo. 246 (73 S. W. 581); *Luckell* v. *Century Bldg. Co.,* 177 Mo. 608 (76 S. W. 1035); *Quimby* v. *Bee Bldg. Co.,* 93 Neb. 87 (127 N. W. 118). The instruction complained of was a proper exposition of the rule of law applicable to the case at bar, and no error was committed in charging the jury in the language employed.

5, 6. The court gave another instruction, in effect as follows: "The defendant owed the duty to the plaintiff of exercising such a degree of care and prudence with reference to her (the plaintiff) as the most prudent person would have exercised under the circumstances." It is insisted by defendant's counsel that the part of the charge last adverted to is inconsistent with the instruction hereinbefore quoted, and for that reason the judgment should be reversed. If by the latter language the court intended that only ordinary

care was required to be exercised by the defendant in the management of the elevator, this part of the charge was erroneous, as we have attempted to show in the degree of care demanded.

The objection to inconsistent and contradictory instructions is that it cannot usually be determined from the verdict what rule as given by the court the jury adopted: *Morrison* v. *McAtee,* 23 Or. 530 (32 Pac. 400). If only ordinary care was the standard which the jury applied to the operation of the elevator, their verdict was predicated upon a less degree of prudence and foresight than was specified in the instructions first hereinbefore referred to, so that, the verdict having been in plaintiff's favor, it is immaterial whether or not one guide or the other was taken. If, therefore, any error was committed in the giving of the latter instruction, it was not prejudicial to the defendant: *Smithson* v. *Southern Pacific Co.,* 37 Or. 74 (60 Pac. 907); *Farmers & Traders' Bank* v. *Woodell,* 38 Or. 294 (61 Pac. 837, 65 Pac. 520).

7. The elevator referred to herein is raised and lowered by water that is kept under pressure by steam pumps. The power is applied in a hollow cylinder to the front end of a piston, which part of the machinery is, when in operation, constantly under pressure, and though at such time water is opposed to the bottom of the piston, such force is relieved by a valve, or the water can circulate through the cylinder. To the upper end of the piston rod are attached wire cables which, passing over contiguous pulleys, extend to the top of the building, where, again passing over similar wheels, the ropes reach downward and are fastened to the top of the car. To the bottom of the elevator is attached a lever that is connected with another wire cable the loop of which, extending downward, passes over pulleys near the top of the cylinder, so that a

movement by the operator in the car of the lever back or forth causes the water to enter or be excluded from the cylinder at the upper end of the piston, thereby forcing the elevator to ascend or descend. Grooves at the top and bottom of the sides of the car cause it to follow upright steel guides which project a short distance from but are securely fastened to the framework of the elevator shaft. Suspended iron bars are fastened to wire cables which, running over pulleys at the top of the building, are attached to the car, balancing it. At the bottom of the elevator well and connected with the machinery are pulleys over which runs another wire cable that, extending to the top of the building, passes over other pulleys and operates a governor, the revolving arms of which have at their extremities iron balls that rise and fall as the movement of the elevator is increased or diminished. In case the car attains undue velocity, the balls rising release a grip that clutches the cable, the loop of which is attached beneath the car to a safety appliance, consisting of two hinged steel wedges fastened to the elevator and set on each side of the steel guides. These wedges are operated by right and left hand screws, connected with a safety drum around which the cable from the governor is coiled, so that when the speed indicator causes the clutches to grip the cable, the descent of the car, by unwinding the slack of the rope on the drum, sets the safety appliance, causing the wedges gradually to impinge upon the steel guides until sufficient resistance is obtained ultimately to stop the car.

The testimony shows that the elevator in question has a carrying capacity of 2,500 pounds maximum test, and the speed is limited to 450 feet per minute. If the velocity of the car exceeds such restriction 25 per cent or more the governor causes the clutches to

release the steel wedges, forcing them to collide with the steel guides in the manner indicated. When the governor properly sets the safety appliance in motion, the speed of the car gradually decreases, and it continues to descend from 7 to 12 feet, depending upon the weight in the elevator. F. M. Lamont testified that at the time of the accident he was in the car saying:

"I got on with a party of six at the seventh floor. At the next stop below some other persons got on the elevator, and immediately the elevator commenced to take on speed, and some one remarked, 'It is going some,' and in less time than it takes to recite it, we brought up with a sudden halt, and every one was in confusion; that was about all there was to it.

"Q. How many people would you say there were in the elevator, at the time?

"A. A dozen or more."

Burdella C. Hold testified that in her opinion there were in the car at the time of the accident 12 or 14 people, including herself. Charles Klapper, who just preceding the injury entered at the sixth floor the descending car, said upon oath: "It was full when we got on." George T. Udy, as defendants' witness, testified that he was the stationary engineer in charge of the machinery in his employer's building at the time of the accident; that beneath the car the drum which operates the safety appliance contains about six coils of wire cable, and that a little more than one coil of the rope was unwound when the car stopped. A. C. Nelson, as plaintiff's witness, testified in rebuttal that for about eight years he had been engaged as an engineer, and knew the mechanism of a hydraulic elevator. He was then asked, after stating the facts assumed as constituting a hypothetical inquiry: "From the fact that the car stopped suddenly, what would

you say was the cause of it?'' He replied: ''It goes·
to indicate that there must have been too much loose
cable, and they were not able to rewind it around the
drum. The safety was too close to the guides,
whereby if it had been a shorter cable, they could not
have wound it up clear around the drum; it would
have taken up so that the clutch would practically have
been all the way from a quarter to a half inch from the
guide.'' The bill of exceptions has attached thereto
the whole testimony from which the foregoing ex-
cerpts have been taken, and from a careful examina-
tion of which it cannot be said there was no evidence
to support the verdict: Article VII, Section 3, of the
Constitution as amended (see Laws 1911, p. 7).

It follows that the judgment should be affirmed, and
it is so ordered.                    AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BURNETT
and MR. JUSTICE RAMSEY concur.