Argued October 13, reversed and remanded December 13, 1961

# TAYLOR *v.* LAWRENCE

366 P. 2d 735

*Clifford B. Olsen*, Portland, argued the cause for appellant. On the brief were Anderson, Franklin, Jones & Olsen.

*Laurence Morley*, Lebanon, argued the cause for respondent. On the brief were Morley, Thomas & Orona.

Before WARNER, Presiding Justice, and SLOAN, O'CONNELL, LUSK and BRAND, Justices.

LUSK, J.

This is an action to recover damages for personal injuries in which the jury returned a verdict for the defendant and the plaintiff has appealed.

Plaintiff's fifth amended complaint, on which the case was tried, alleged the following:

"On or about September 9, 1957, plaintiff and defendant were among the guests at the home of Mr. and Mrs. Kenneth Smitley at Lebanon, Oregon. While the plaintiff and other guests were seated around a picnic table set up in the Smitley yard, and the plaintiff's hand was resting upon such table, the defendant picked up a large, sharp bread knife and with knowledge of the position of plaintiff's hand and the probable consequences of his conduct, intentionally, recklessly, and in a wanton manner, and with utter disregard for plaintiff's safety, chopped with said knife in a playful manner, either at plaintiff's hand with the hope that she would remove it in time, or to see how close he could come to plaintiff's hand with such knife, and struck plaintiff across her right index finger with such knife, causing personal injuries to plaintiff as hereinafter set forth."

The defendant, while admitting that the plaintiff sustained some personal injury to her right index finger on the occasion in question, denied the rest of the complaint and alleged as follows:

"That the plaintiff assumed the risk of injury

to her hand by voluntarily and deliberately engaging in a game wherein a French bread knife was being used in play, and under such circumstances the plaintiff knew, or should have known, of the likelihood of the injury to her hand.

"That the plaintiff deliberately, wantonly and recklessly risked injury to her hand, by placing her hand at a position in which she knew said knife would strike. That the plaintiff failed to remove her hand in sufficient time, as required by the game being played, involving said knife and said plaintiff.

"That the acts of the plaintiff and the acts of the defendant, in the above entitled matter, was a joint venture and common game engaged in by both plaintiff and defendant, and as a direct and proximate result of the intentional and wanton acts on the part of the plaintiff and the assumption of the risk by the plaintiff in the game being played by the plaintiff and the defendant, plaintiff suffered some injury, the extent of which is unknown to the defendant herein."

The evidence disclosed the following facts: On September 9, 1957, the plaintiff, Mrs. Taylor, and her husband, Mr. and Mrs. Smitley and Mr. and Mrs. Robert Nesbitt played golf at Albany and afterwards repaired to the Smitleys' home in Lebanon for "a cocktail and a steak dinner." Other guests were the defendant, Lyon Lawrence, and his wife and Mrs. Virgie Clarke. Dinner was out of doors and before it was ready the defendant engaged in "the game" referred to in the pleadings by placing his hand on a long picnic table, stabbing at it with what is referred to as a French bread knife and withdrawing his hand before the point of the knife struck the table. While this was going on the plaintiff and her husband, Mr. and Mrs. Nesbitt and Mrs. Lawrence were seated at the table. According to the plaintiff's testimony her hands were resting on

the table, but she did not notice what the defendant was doing because she was looking at the garden or watching Mr. Smitley tending steaks. She testified that she did not see the knife and was not aware of it until her finger was cut, when she jerked her hand off the table. The evidence on behalf of the defendant, however, was to the effect that after he had demonstrated that he could withdraw his hand quickly enough to avoid injury, he then started to play the game with Mr. Taylor and that while so engaged the plaintiff asked if she could play too and he decided to accommodate her. He testified:

"A Well, during the time that I was playing with Mr. Taylor, Mrs. Taylor asked if she could play, too. I believe she asked this twice but I won't say that for sure, but she did ask it at least once while I was playing with Mr. Taylor, so at that time I started to oblige her. She extended her hand and I can't remember whether I took one swipe with the knife at her finger and hit it that time or if I started like I did with Mr. Taylor once or twice and then started playing a little bit more carelessly, but in any event, at either the first or a subsequent motion with the knife the knife struck Mrs. Taylor's finger."

■ The plaintiff assigns error to the giving of the following instructions:

"Reckless and wanton conduct is defined as an act or acts done by one party towards another under circumstances where it was apparent, or should have been apparent, that the act would prove disastrous to the other and was so obvious that the actor must have been aware that it was highly probable that harm would follow.

"But more than that, the actor must have had in mind at the time a conscious indifference to the consequences. This mental attitude simply ex-

pressed is an attitude of: 'I do not care what happens.'

"I therefore instruct you that in order for the plaintiff to prevail the plaintiff must prove by the preponderance of the evidence that the alleged acts of the defendant was an unreasonable act, done under circumstances where it was obvious that he should have been aware that injury to the plaintiff would likely occur, and that further the defendant consciously was unconcerned and did not care whether or not the plaintiff was injured. Unless you find these facts to be true, your verdict must be for the defendant."

To the foregoing, the plaintiff excepted as follows:

"The Court instructed the jury that wantonness involved the propositions of a 'I-don't-care attitude' or a conscious indifference to the rights of others. It is my understanding that since the decision of the case of Williamson v. McKenna, that that is not the law in the state of Oregon. That recklessness is nothing more than—wanton misconduct is nothing more than gross negligence which involves intentionally doing an act that involves a great degree of risk. * * *

"THE COURT: Very well. The exceptions noted are allowed."

Counsel for the plaintiff have not included in their brief all the instructions on wanton misconduct. The portions omitted immediately preceded those quoted above and read as follows:

"Recklessness or wantonness imports that a person has intentionally done an act of an unreasonable character in disregard of a risk known to him or so obvious that he must be taken to have been aware of it and so great as to make it highly probable that substantial harm would follow.

"While recklessness suggests that the person charged has intentionally done something or failed

to do something of an unreasonable character, this is not to say that he must have intended to cause harm. Reckless conduct merely involves choosing a course of conduct or action which spells danger.

"Further, it is not necessary that the defendant know of the risk involved because if the danger is obvious, he will be presumed to have been aware of it."

We think that it was error for the court to instruct the jury that in order for the plaintiff to prevail she must prove that "the defendant consciously was unconcerned and did not care whether or not the plaintiff was injured." The instruction imposed upon the plaintiff a heavier burden of proof than is warranted by the law as enunciated by this court in *Williamson v. McKenna*, 223 Or 366, 354 P2d 56, and in the earlier cases of *Falls v. Mortensen*, 207 Or 130, 295 P2d 182, and *Cook v. Kinzua Pine Mills Co.*, 207 Or 34, 293 P2d 717.

The complaint charges the defendant with wilful or wanton misconduct. In the cited cases we approved the definition of "reckless disregard of safety" (an equivalent for wilful or wanton misconduct) given in 2 Restatement, Torts § 500, and reading as follows:

"The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him."

We also approved the gloss on that rule found in comment "c" to section 500 at page 1295:

"In order that the actor's conduct may be reck-

less, it is not necessary that he himself recognize it as being extremely dangerous. His inability to realize the danger may be due to his own reckless temperament or to the abnormally favorable results of previous conduct of the same sort. It is enough that he knows or has reason to know of circumstances which would bring home to the realization of the ordinary, reasonable man the highly dangerous character of his conduct."

In the *Williamson* case the court was at pains to point out that it is not necessary that defendant actually know of the risk; and that recklessness is "not necessarily a 'state of mind' showing a consciousness of the danger and an election to encounter it; 'recklessness' may be found in circumstances where the defendant did not appreciate the extreme risk, but where any reasonable man would appreciate it." 223 Or at 397.

The opinion continues: "It follows that in the adjudicated cases expressions such as 'reckless disregard,' 'reckless state of mind,' 'conscious indifference,' 'conscious choice of action,' are not to be taken to mean that there must be proof that defendant actually had such a state of mind; such expressions are appropriate to describe the hypothetical state of mind of the hypothetical reasonable man who, faced with the dangerous situation, nevertheless elected to encounter it." 223 Or at 397-398.

Clearly, an instruction that it must be proved that *the defendant* "consciously was unconcerned and did not care whether or not the plaintiff was injured" cannot be reconciled with the objective test of the *Williamson* case and the prior cases dealing with this subject which we have cited. See, also, Prosser on Torts (2d ed) 151.

It is true that in the *Williamson* case the court referred with approval to the use of the expression "I don't care attitude" in instructions to convey the idea of consciousness of risk to the jurors' minds. 223 Or at 401. The trial judge, therefore, did not err in using that expression for the purpose of explaining to the jury the meaning of conscious indifference to the consequences, but it was quite a different thing for the court to inform the jury that the plaintiff must prove that the defendant actually had such a state of mind. The whole discussion of the question in the *Williamson* case is opposed to the sanctioning of such a rule.

■ The rule that instructions are to be viewed as a whole is invoked by counsel for the defendant and attention is called to the other instructions in which the court stated the law substantially as laid down in our decisions. But the difficulty here is that the instructions are contradictory because in one breath the jury were told that it is not necessary that the defendant know the risk involved because if the danger is obvious he will be presumed to be aware of it, and in the next breath they are charged that the plaintiff must show that the defendant was *consciously* unconcerned, etc. Inconsistent or contradictory instructions are erroneous and ground for reversal because it cannot usually be determined from the verdict what rule as given by the court the jury adopted. *Kelly v. Lewis Inv. Co.*, 66 Or 1, 9, 133 P 826. See *Voight v. Nyberg*, 218 Or 383, 394, 345 P2d 821, and cases there cited.

On another trial the court should avoid instructions such as those complained of and should also include the substance of comment "c" in 2 Restatement, Torts § 500, supra, to the effect that in order to establish

wantonness it is not necessary that the defendant himself recognized his conduct as being extremely dangerous, but it is enough that he knows, or has reason to know, of circumstances which would bring home to the realization of *the ordinary, reasonable man* the highly dangerous character of his conduct.

■ The only other assignment of error is based on the plaintiff's exception to the use of the expression "possible injury" in an instruction on wantonness in relation to the conduct of the plaintiff. It will be recalled that the defendant pleaded that the plaintiff was a voluntary participant in "the game" and thereby wantonly and recklessly risked injury to her hand. Counsel for the plaintiff apparently concede that the facts alleged would constitute a defense if proved (see 2 Harper and James, Law of Torts 1214; Prosser on Torts (2d ed) 290); but they say that the rule governing plaintiff's conduct is the same as the rule governing his own and that the jury should be so instructed. The court did indeed tell the jury in so many words that the rule is the same in both cases, but, in explaining the rule, said: "* * * if you should find that the plaintiff herself was wanton in that she engaged in this game and submitted herself to a possible injury knowingly with reckless disregard for the possible results therefrom * * *" then in substance the plaintiff could not recover. Counsel for the defendant concede in their brief that the use of the word "possible" in this instruction was ill advised and we agree. On a new trial the words of the Restatement quoted above, "an unreasonable risk of bodily harm", or similar language, should be substituted for the language complained of.

The judgment is reversed and the cause remanded for further proceedings in conformity with this opinion.