Argued April 11, reversed May 23, 1962

# STEPHENS v. CITY OF ST. HELENS
### 371 P. 2d 686

[ 1 ]

*Charles S. Crookham,* Portland, argued the cause and filed briefs for appellant.

*Marshall C. Hjelte,* St. Helens, argued the cause for respondent. On the brief were Hjelte & Kalberer, St. Helens.

Before McAllister, Chief Justice, and Rossman, Perry and Goodwin, Justices.

GOODWIN, J.

The plaintiff appeals from a judgment n.o.v. in favor of the defendants after a verdict for the plaintiff in an action for personal injuries.

The plaintiff was arrested by the defendant Hansen in the course of Hansen's duties as chief of police of the defendant city. In his handling of the plaintiff, the officer used force which the jury could have found was excessive. There was also undenied evidence that the plaintiff himself had been somewhat intransigent in

failing to get out of a chair in the police station when told by the officer to do so. In the coercive exercises which ensued, the officer did not immediately effect the separation of the plaintiff from the chair. There was evidence, however, from which the jury could have found that the officer caused the plaintiff to suffer a shoulder separation, among other injuries.

The trial court was of the opinion that the plaintiff's own contributory fault played a fatal part in his difficulties. The court further held that there was insufficient evidence of wantonness on the part of the officer to remove the case from the orthodox negligence-contributory-negligence approach to liability. The court submitted the case, however, under the provisions of ORS 18.140 (2), with leave to the defendants to move for the judgment n.o.v. in the event the jury should find for the plaintiff.

■ The plaintiff had presented his case on the theory that the police officer's conduct was wanton. If the defendant Hansen was guilty of wanton misconduct, then, according to our decisions, the fact that the plaintiff himself may have been negligent would not be a defense. *Cook v. Kinzua Pine Mills et al,* 207 Or 34, 293 P2d 717, and *Falls v. Mortensen,* 207 Or 130, 295 P2d 182 (1956).

■ The parties in their briefs and arguments have discussed the possibilities of "contributory wantonness" in this case (See *Taylor v. Lawrence,* 229 Or 259, 366 P2d 739), but the record fails to present such an issue. The only fault upon the part of the plaintiff, supported by any evidence, is that he may have used poor judgment in refusing to get out of a policeman's chair. Such fault on his part does not amount to "contributory wantonness", whatever else that expression might cover in a proper case. See 2

Harper & James, Law of Torts 1214, § 22.6 (1956);
Prosser, Torts 290, § 51 (2d ed, 1955).

■ We turn, then, to the record to see whether there
was sufficient evidence to permit the jury to charac-
terize the policeman's behavior as wanton conduct.
In *Taylor v. Lawrence,* supra, we defined wanton mis-
conduct in terms similar to those employed in Restate-
ment, Torts § 500, and the comments thereto. And see
*Williamson v. McKenna,* 223 Or 366, 397, 354 P2d 56,
discussing reckless conduct.

The principal evidence of such aggravated con-
duct, other than the plaintiff's own testimony about
his injuries and the medical corroboration thereof, was
the evidence concerning a device called a "come-along",
or an "iron claw." The evidence bears upon the offi-
cer's state of mind as well as upon the objective facts.
The device itself was in evidence and went to the jury
room. The controversy centered about the nature and
extent of the use of this device on the plaintiff's per-
son. We will quote a few words from the defendant
Hansen's own mouth:

"A  Well, to begin with, an iron claw is not an
instrument used necessarily for making an arrest.
It is an instrument used for cooling an unruly
prisoner, or moving an unruly prisoner when it
becomes necessary and when other means are not
sufficient.

"Q  What do you mean by the term 'cooling an
unruly prisoner.'
"A  Cooling a man that is intractable to get him
settled down.

"Q  Do you mean by that you can use the claw
upon him so that you can put him completely under
your control?
"A  You can. Yes.
"* * * * *."

The device in question is a stainless steel instrument equipped with a ratchet so that it can be tightened by the user, and cannot be loosed without the user first releasing the ratchet. Again we quote the officer:

"Q When you turned that—How did you try to put that on, at that time; did you have Mr. Stephens' arm out from the inside the chair here, or in other words, out from the side or was it still locked in the chair when you tried to put that gadget on his arm.

"A His right arm was still locked in the chair, but his left arm was partially—I think we had it out because we used his hand, still holding him when he was making every effort to try to keep from pulling his arm out.

"Q Did you put that on his left arm?

"A I started to, yes.

"Q You say you started to. How far did you get and then what happened.

"A Well, I started to put it on and I know how painful these things can be, just fooling around there in between officers in the department; turning it, it is easy to find out what it will do with extreme pressure, when extreme pressure was put on. This case was not an important case. It was just a common drunk. You do not expect to create too much of a problem. It was just we didn't know who he was or where he belonged. That being the case, I couldn't see the point, at the moment I started using it, I couldn't see the point in going all the way out. It wasn't that important.

"* * * * *"

We believe the foregoing samples of the testimony, even though explained in part by the plaintiff's insistence on staying in the chair, justified the jury in believing that the degree of force used on the plaintiff was so excessive as to amount to a wanton disregard of his rights.

■ The city has rested its defense almost entirely upon the proposition that it was the plaintiff's duty to obey the officer's commands, and that whatever force was applied to him in order to achieve obedience was reasonable. As a general proposition, reasonable force is no doubt justified in the handling of an arrested person, even though the arrest is for a relatively inconsequential offense. See Annotation, 60 ALR2d 873, 885. However, we have examined the record and are convinced that if it was of vital importance to the police that the plaintiff be moved from one part of the police station to another, he could have been moved chair and all without subjecting him to physical abuse. See *Paget v. Cordes,* 129 Or 224, 277 P 101 (1929). The plaintiff had been arrested because the officer suspected that he had had too much to drink. On his arrival at the police station, the plaintiff had demanded the services of a doctor. There was some testimony that the officer called one doctor but was unable to locate him. It later developed that a friend came by and took the plaintiff home. The plaintiff at all material times was suffering from visual and hearing defects which could have accounted for part of his difficulty. The police officer's opinion that the plaintiff was intoxicated was the only evidence to support that theory. These were matters the jury was entitled to consider. The defendants had a fair trial and the evidence fully warranted submission of the case to the jury.

The judgment n.o.v. must be reversed with instructions to reinstate the verdict; judgment for the plaintiff to enter upon the mandate.

Reversed.