Argued October 29, reversed and remanded December 20, 1973

LAWHEAD, *Appellant, v.* WOODPECKER
TRUCK & EQUIPMENT, INC., ET AL,
*Respondents.*
517 P2d 283

*Leeroy O. Ehlers,* Pendleton, argued the cause for appellant. On the briefs were Fabre & Ehlers, Pendleton.

*George H. Corey,* Pendleton, argued the cause for respondents. On the brief were Corey, Byler & Rew, Pendleton.

Before McALLISTER, Presiding Justice, and DENECKE, HOLMAN, TONGUE, HOWELL and BRYSON, Justices.

TONGUE, J.

This is an action for personal injuries allegedly suffered during the course of a wrongful repossession by defendants of plaintiff's logging truck. The jury returned a verdict in favor of defendants. Plaintiff appeals from the resulting judgment.

Plaintiff is a logger and was the contract purchaser of a log truck and trailer from defendant Caldwell Contracting, Inc. Its "managing agent," defendant Arthur B. Caldwell, came to plaintiff's house on January 4, 1971, and told him that the insurance would expire on the truck that night and that he wanted the logs unloaded before the insurance expired. Plaintiff then drove the truck to the Harris Pine Mills, where it was unloaded. He was unable to leave with the truck, however, because defendant Caldwell had parked his car in the gateway.

According to plaintiff, Mr. Caldwell then told plaintiff that he was going to take the truck to the Husky Truck Stop because the insurance had expired and that plaintiff was also "delinquent on my payments." Plaintiff testified that he responded that he was going to stay in the truck and that if it was taken anywhere he would take it back to Pilot Rock where he ordinarily stored it. Plaintiff also testified that Mr. Caldwell then told him "several times" to get out of the truck, but that he refused to do so.

According to Mr. Caldwell, when he "stepped up on the running board," plaintiff "leaned over and went to pick something up" and Mr. Caldwell then withdrew and called his attorney, the sheriff's office,

and John Clark of defendant Woodpecker Truck & Equipment, Inc. Two deputy sheriffs then arrived and talked to plaintiff, but said that they were only there "to keep the peace."

Plaintiff admitted that although several people "suggested" that he get out of the truck, no one ordered him to do so and that although he was free to leave, he voluntarily chose to stay in the truck.

A tow truck operated by defendant Clark of Woodpecker Truck & Equipment, Inc., then arrived and proceeded to hoist the front of the truck off the ground and to tow it away. Plaintiff testified that he remained in the truck "because I believed the truck was mine and I had a legal right to claim possession" and that he "did not foresee any particular problems in staying in the cab."

Defendant Clark, the tow truck operator, testified that it was not normal procedure to tow a truck with someone inside the cab because a mishap might occur in the towing operation; that "personally, I wouldn't ride in a towed truck" and that "If something goes wrong, then there can be a possibility of physical harm." He also testified, however, that there would be no hazard in riding in the cab "as long as no accident happened" and that he was "speaking of some third party accident type of thing."

Plaintiff testified that when the tow truck, with Mr. Caldwell as a passenger and with the log truck in tow, made a stop at an intersection the log truck dropped to the ground and that this "jerked my neck back" and instantly "gave me quite a lot of pain in my shoulder and arm and neck." He said that at that time he was sitting in the seat of the truck and leaning over

the steering wheel, with both hands on the wheel. Plaintiff does not contend that the truck was dropped intentionally.

Defendants denied that the truck was dropped at the intersection and offered evidence that the hoisting and towing equipment was in proper condition and that it was properly operated.

Upon arriving at the "truck stop" the logging truck was towed inside a large building and was left there, with plaintiff still in the cab. He testified that after sitting there for about half an hour he tried to get out of the truck, but was in such pain that he "didn't feel I could let myself down out of the truck." Plaintiff then had an attendant call his son, who came to get him.

Three weeks later plaintiff filed a complaint against defendants Caldwell and Caldwell Contracting, Inc., for wrongful conversion of the truck and alleged that "the taking and conversion" of said property was done "willfully and without justification or excuse." He received judgment in that action for $3,350 in general damages and $100 as punitive damages.

Plaintiff then filed the complaint in this action to recover damages for personal injuries. His complaint alleged two causes of action. The first alleged negligence in using defective hoisting equipment, in failing to operate the equipment carefully, and in failing to use proper care in operating the tow truck. The second alleged that defendants acted "in a reckless and wanton manner and in utter disregard of the rights and safety of the plaintiff" in that "defendants took physical possession of said truck by force, and over the objections of plaintiff and against his will"

and "maintained complete control over said Mack truck and plaintiff as its occupant, by force."

## 1. *Wanton misconduct.*

Plaintiff first assigns as error the "sustaining of the defendants' motion for a directed verdict with respect to the second count, namely, wanton misconduct."

In support of that contention plaintiff relies upon our decisions in *Stephens v. City of St. Helens,* 231 Or 1, 371 P2d 686 (1962); *Taylor v. Lawrence,* 229 Or 259, 366 P2d 735 (1961); *Falls v. Mortensen,* 207 Or 130, 295 P2d 182 (1956); and *Cook v. Kinzua Pine Mills Co. et al,* 207 Or 34, 293 P2d 717 (1956).

In those cases this court held that wanton misconduct is to be defined in the same terms as reckless conduct is defined in 2 Restatement of Torts § 500 (1934).[1] As a result, it was held in *Falls v. Mortensen, supra* at 135 and 147, that:

> " '* * * Wanton misconduct is an intentional doing or failing to do of an act when one knows or has reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates unreasonable risk of harm to others but also involves a high degree of probability that substantial harm will result to him.' "

To the same effect, see *Williamson v. McKenna,* 223 Or 366, 372, 354 P2d 56 (1960).[2]

---

[1] See 3 Restatement (Second) of Torts, Appendix, § 500, Reporter's Notes (1966). "No change in substance is intended."

[2] In Williamson v. McKenna, 223 Or 366, 372-73, 354 P2d 56 (1960), this court held that:

> "* * * At the upper end of the scale we set off intentional conduct, i.e., conduct engaged in for the purpose of inflicting harm on another. At the opposite and lower end of the scale

Plaintiff recognizes that "a further question arises as to the degree of danger that defendants' conduct created," but contends that this requirement was satisfied by the testimony of defendant Clark that he would not ride in a towed vehicle because of the "possibility of physical harm" if something goes wrong.

■ After reviewing the testimony we hold that the "possibility of physical harm" to one riding in the cab of a heavy logging truck while it is being towed by a tow truck does not satisfy the requirement of the established definition of wanton misconduct that defendants' conduct must be such as to "not only create an unreasonable risk of bodily harm to the other *but also involves a high degree of probability that substantial harm will result to him.*"

It follows that the trial judge did not err in sustaining defendants' motion for a directed verdict with respect to plaintiff's second cause of action, alleging wanton misconduct.

2. *Contributory negligence.*

Having held that there was not sufficient evidence to prove wanton misconduct it becomes unnecessary to decide whether contributory "negligent and

---

is a range of inadvertent conduct which we call negligence. Between these two extremes the law has created still another category which is described variously as reckless, willful, or wanton conduct. See 2 Restatement, Torts, § 500. This latter category is justified as an area of fault distinct from negligence on the ground that it involves a mental state in which the actor intentionally does an act with knowledge (sometimes implied) that there is a strong probability that serious harm will be inflicted on another. It is distinguishable from intentional conduct on the ground that the latter requires an intent to inflict the harm, whereas reckless conduct involves only an act done with indifference as to whether harm will or will not result."

reckless" conduct would be a defense to such a cause of action or whether, in such an event, plaintiff's conduct was "negligent and reckless." See *Stephens v. City of St. Helens, supra* at 3. See also *Taylor v. Lawrence, supra* at 267; 2 Restatement (Second) of Torts § 482 (1965); and Lacy, Torts—1960 Oregon Survey, 40 Or L Rev 278, 282 (1961).

Plaintiff also contends, however, that the court erred in refusing to strike and withdraw from the jury defendants' specifications of contributory negligence as a defense to plaintiff's cause of action for ordinary negligence.

Defendants' answer alleged that plaintiff was negligent

"(1) In failing to exercise reasonable control over his bodily movements and positions within the truck so as to prevent his injury.

"(2) In that plaintiff knew or should have known of the hazards of riding in the cab of a truck being towed by a tow truck and voluntarily assumed the risk thereof."

Upon examination of the record we find no evidence to support defendants' allegation that plaintiff failed "to exercise reasonable control over his bodily movements and positions within the truck so as to prevent injury." He testified that when the truck dropped he was sitting in the cab, with his lower back resting against the back of the seat of the cab, leaning over the steering wheel with both hands on the wheel.

■ Defendants contend that "the jury was entitled to consider whether plaintiff's failure to brace himself while riding in the towed vehicle, the front end of which was raised, was contributory negligence."

There was no evidence, however, that plaintiff would not still have suffered the same injury had he attempted to "brace himself" or that he should have foreseen that he might be injured if he failed to do so. According to the evidence, he was holding on to the steering wheel with both hands and it is sometimes said that a person whose body is somewhat relaxed at the time of a fall may be less apt to suffer serious injury than one who is more rigid or "braced." Regardless of whether or not that may be true, we do not believe that in the absence of such evidence the jury could properly draw the inference that such conduct constituted contributory negligence under the facts of this case. It follows that it was error for the trial court to submit to the jury that specification of alleged contributory negligence.

■ A more difficult question is presented by defendants' allegation that plaintiff should have known of the hazards of riding in the cab of a truck being towed by a tow truck and that he voluntarily assumed such a risk. The trial court held, and properly so, that this was not a proper allegation of assumption of risk, but that it was an allegation of contributory negligence. See *Ritter v. Beals et al,* 225 Or 504, 511, 514, 358 P2d 1080 (1961); *Stewart v. Jefferson Plywood Co.,* 255 Or 603, 612, 469 P2d 783 (1970); 2 Restatement (Second) of Torts § 466 (a); and 2 Harper and James, Law of Torts 1165-1168, § 21.1 (1956).

■ Upon examining the record, however, we find that the only evidence of alleged "hazards" in riding in the cab of a truck being towed by a tow truck was the testimony of the tow truck operator that he would not do so because of the possibility that a towed vehicle might become involved in an accident with another

vehicle. He also testified that there would be no hazard in riding in the cab as long as no "third party accident" occurred. Defendants offered no testimony to the effect that there was any hazard or danger of the truck being "dropped" by the tow truck.

In this case, of course, plaintiff's injury was not caused by a "third party accident," but allegedly occurred when the truck was "dropped" by the tow truck.

It is well established, as stated in 2 Restatement (Second) of Torts § 468, that:

"The fact that the plaintiff has failed to exercise reasonable care for his own safety does not bar his recovery unless his harm results from one of the hazards which made his conduct negligent."

To the same effect, see Prosser, Law of Torts (4th ed 1971), 421-22, § 65 and Harper and James, The Law of Torts 1230, § 22.10 (1956).

In this case there was no evidence that would support a finding that plaintiff should have foreseen that by remaining in the cab of the truck while it was being towed the truck might be "dropped." As a matter of fact, considerable evidence was offered by defendants to the effect that this could not have happened and did not happen.

It follows, in our opinion, that plaintiff's alleged injury did not result from the hazard which was claimed by defendants to make his conduct negligent, and was not within the "scope" of that hazard, with the result that the trial court erred in submitting to the jury the question whether plaintiff was guilty of contributory negligence in remaining in the cab of the truck.

It also follows that because, under the present record, the trial court should have withdrawn from the jury the issue of contributory negligence, we need not consider whether the instructions as given on that subject were correct or incorrect.

For similar reasons, we need not consider whether plaintiff's requested instruction that if he was rightfully in the possession of the truck he had the right to employ reasonable means to defend such possession was a proper instruction. Because the means employed by him in this case were to remain in the cab of the truck, that instruction related primarily to the issues raised by defendants' affirmative defense that in remaining in the truck plaintiff was contributorily negligent. Because that defense should have been withdrawn from the case, at least under the present record, it was not error to refuse to give this instruction.

3. *Res ipsa loquitur—loss of earning capacity.*

Plaintiff also assigns as error the refusal of the court to give a requested instruction on res ipsa loquitur and contends that defendants had complete management and control of equipment used to hoist and tow plaintiff's truck, citing *Powell v. Moore,* 228 Or 255, 269, 364 P2d 1094 (1961).

Defendants contend, in response, that such an instruction on res ipsa loquitur would have been improper because plaintiff pleaded specific allegations of negligence and did not plead general negligence, citing *Dacus v. Miller,* 257 Or 337, 343, 479 P2d 229 (1971), and *Thorp v. Corwin,* 260 Or 23, 26, 488 P2d 413 (1971).

In *Thorp* we said, at p 26:

"* * * When the complaint alleges both specific allegations of negligence and general allega-

tions of negligence, the plaintiff may, where applicable, invoke res ipsa loquitur as to either or both. Waterway Terminals v. P. S. Lord, 256 Or 361, 474 P2d 309 (1970).

"However, where only specific acts of negligence are charged, res ipsa loquitur can be used only to establish the particular acts alleged. Dacus v. Miller, supra; Brannon v. Wood, 251 Or 349, 444 P2d 558 (1958)."

■■ The reason for such a rule is that, as a matter of fairness, a defendant should not be required to litigate other issues or contentions, advanced for the first time on trial. Prosser, Torts (4th ed) 233, § 40. As also stated in 2 Harper and James, The Law of Torts 1096-1097, § 19.10 (1956):

"* * * [T]he proof in a res ipsa loquitur case seldom points to a single specific act or omission. Typically, it points to several alternative explanations involving negligence (e.g., negligence in construction, maintenance, or operation) without indicating which of them is more probable than the other. In such a case the pleadings may well be required to cover the alternative explanations, so as to give fair notice to the adversary of the scope of the case he has to meet. In practice this usually is not a very onerous requirement and can be met either by broad generality of allegations, or by listing all the specific acts or omissions to which the proof may point, or by combining general with specific allegations. * * *"

This complaint alleged that defendants were negligent

"(1) In using defective hoisting equipment to raise the front of the Mack truck, which did not hold the Mack truck in a raised position.

"(2) In failing to operate the hoisting equipment carefully, so that the hoisting equipment would not slip or fail to hold in the raised position.

"(3) In failing to use proper or any care in operating the tow truck while the Mack truck was being towed to prevent the Mack truck from being dropped, jolted and bounced."

These specifications not only "cover(ed) the alternative explanations, so as to give [defendants] fair notice of the case he has to meet," but when taken together they are about as broad as a general allegation of negligence could be in such a case. It also appears to be clear that the equipment used in the hoisting and towing of plaintiff's truck was under the exclusive control of the defendants to the same extent as were the activities involved in *Powell v. Moore, supra.* Accordingly, we hold that this was a proper case for the giving of an instruction on res ipsa loquitur.[9]

Because this case must be remanded for a new trial for other reasons we need not decide whether it would have been reversible error to give the instruction on res ipsa in the form requested by plaintiff. We do not agree that the requested instruction "would compel a finding for the plaintiff," as contended by defendants. We believe, however, that an instruction in more moderate terms, as approved in *Powell v. Moore, supra* at 228 Or 265, should be given on the retrial of this case.

Plaintiff also assigns as error the instruction of the trial court on loss of earning capacity and the refusal of the trial court to give requested instructions

---

[9] Defendants also contend that because the evidence was "almost overwhelming that there was no dropping of the truck as contended by the plaintiff," the trial judge could properly find that res ipsa was not properly applicable in this case, citing Kaufman v. Fisher, 230 Or 626, 639-41, 371 P2d 948 (1962). The jury was entitled, however, to believe plaintiff's testimony that the truck was dropped and under that testimony this was a proper case for application of the doctrine of res ipsa loquitur.

on that subject. When the case was tried this court had not yet decided the case of *Conachan v. Williams*, 266 Or 45, 511 P2d 392 (1973). In view of our discussion of this problem in that case there should be no difficulty in framing proper instructions to the jury on this subject on the retrial of this case.

Reversed and remanded.