Argued January 25; reversed March 7; rehearing denied
April 4, 1944

# MELCHER *v.* ADAMS

(146 P. (2d) 354)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY, LUSK, BRAND and HAY, Associate Justices.

*F. S. Senn,* of Portland (Senn & Recken, of Portland, on the brief), for appellant.

*Barnett H. Goldstein,* of Portland (Arthur B. Baines, of Portland, on the brief), for respondent.

BAILEY, C. J. This action was brought by Henry J. Melcher against Sterling Adams, to recover damages for injuries suffered by the plaintiff when he was thrown from an automobile in which he was riding as either a passenger or a guest of the defendant, who was driving the car. From a judgment in favor of the plaintiff the defendant has appealed.

One of the principal matters to be considered is whether or not the circuit court erred in submitting to the jury the question of the plaintiff's status, that of passenger or guest, in the defendant's car at the time

of the accident. To the instruction presenting that question to the jury the defendant excepted as follows:

"Furthermore, I want to except to the court leaving to the jury the question of whether or not the plaintiff was a guest or a passenger here, for the reason that the evidence does not show the relationship of any other than host and guest."

■ It is asserted by the plaintiff that the exception quoted "failed to point out to the court what part of the instruction, if any, was erroneous, and wherein it did not state the law. It is altogether too general to be considered." We are of the opinion that the exception was sufficiently specific and definite. Its meaning must have been clear to the presiding judge, inasmuch as during the entire trial the plaintiff was insisting that he was a passenger in the defendant's automobile when injured, and not a guest, while the defendant's contention was that the plaintiff was a guest.

The defendant and the plaintiff were longshoremen and had been acquainted with each other for five or six years prior to the accident. The plaintiff had ridden to and from work with the defendant a great many times, both in his own car and in that of the defendant.

On January 15, 1942, the plaintiff accompanied the defendant in the latter's automobile from Portland to Bar View on the Pacific ocean, a distance of approximately eighty-eight miles. The defendant had previously sold and on that date was going to deliver to a buyer there what is referred to in the testimony as a clutch for a marine engine, as a "gear" or as a "pump". It was approximately two feet long and twelve inches in diameter, weighed from one hundred to one hundred twenty-five pounds, and was "almost a solid piece of iron".

The trip to the beach was made along the Wilson River highway, and the return journey by way of Wolf Creek road. After delivering the gear the plaintiff and the defendant went "to the fishing dock and talked to the boys" for about an hour. Their purpose in returning to Portland by way of the Wolf Creek road and thereby adding about fifty miles to the trip was "just to waste a little time". It was on the return trip, near Portland, that the automobile skidded on icy pavement and went over an embankment. The plaintiff was thrown from the car and injured.

His reason for taking the drive with the defendant was thus explained by the plaintiff:

"A. Well, that day we wasn't working, and he asked me if I would go along down to the coast. He had asked me to deliver that purchase—help him to deliver that purchase, so I went along. He came out to the house—

"Q. Just a moment. Did you have any purpose in going to the coast?

"A. No, sir.

"Q. Did you ask him to take you to the coast?

"A. No, sir.

"Q. Did you have any business at all whatsoever at the coast?

"A. No, sir; I hadn't.

"Q. Did you have any reason at all to go there?

"A. No, sir.

\* \* \*

"Q. Well, who first talked about the trip? Did he or you?

"A. He asked me to go, to go down there with him.

\* \* \*

"Q. What did he say to you as to what he wanted you to do?

"A. He wanted me to go along to deliver that pump, or whatever it was, or motor, on a boat.

"Q. What did he say as to what he wanted you to do with respect to the pump?

"A. Well, he wanted me to just help him with it."

The plaintiff then testified that the defendant called for him at his residence and they then drove to the home of the defendant's sister, to get the gear or pump. In that connection he gave further testimony, as follows:

"Q. Was the pump there?

"A. Yes, the pump was at his sister's place.

"Q. All right. Now, who helped put the pump in his car?

"A. Well, both of us.

"Q. Did it require the help of both of you to put it on?

"A. Well, one man could handle it if he wanted to do it, but it was kind of hard to get in the back end of the car.

"Q. Did you help him?

"A. Yes, sir; I did."

It was necessary to carry the pump or gear some fifteen or twenty feet to place it in the back end of the defendant's car; and when it was taken out at Bar View it had to be carried the length of the car.

The defendant stated that he asked the plaintiff to accompany him on the trip, and concerning the plaintiff's part in loading and unloading the gear he also testified, thus:

"Q. Did you have to have any help loading that or unloading it?

"A. I didn't have to, but he helped me.

"Q. When you asked him to go along did he go along for the purpose of helping you lift that?

"A. No.

\* \* \*

"Q. Didn't you tell him why you were going to make the trip?

"A. Yes.

"Q. What did you tell him you were making the trip for?

"A. To deliver that reverse gear.

"Q. That was the purpose of this trip, wasn't it?

"A. Yes.

"Q. Something that would be of some benefit to you?

"A. Yes.

"Q. And you delivered a piece of equipment weighing at least a hundred pounds, didn't you?

"A. Yes.

"Q. You wanted somebody to help you with it, didn't you?

"A. Not exactly.

"Q. But you could use the help of somebody?

"A. I could use it or I could do it myself.

"Q. Had you ever invited him on any trip to the coast before?

"A. No.

"Q. Had you made trips to the coast before?

"A. Many times.

"Q. At this particular time how did you happen to invite him?

"A. Well, I don't know; just asked him, that is all."

The defendant had planned to make the trip to the beach a week before the date of the accident, but had been deterred from doing so by a "silver thaw" which coated roads and highways with ice. On the day of the accident there was "ice all along the sides of the road" between Portland and the Coast Range mountains. The plaintiff and the defendant differed in their testimony as to the presence of ice on the pavement other than that at the place of the accident. The plain-

tiff stated that there was ice elsewhere on the pavement and that the automobile had skidded at one other time before the accident occurred. The defendant, however, testified that the only ice on the highway was at the place of the accident. The plaintiff did not, nor was he requested to, drive the car at any time during the trip. Nor did the defendant invite him to accompany him for the purpose of assisting in the driving.

Section 115-1001, O. C. L. A., is as follows:

"No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator or caused by his gross negligence or intoxication or his reckless disregard of the rights of others."

■ The designations "passenger" and "guest" have been adopted by many courts for the purpose of distinguishing an occupant of an automobile who pays for his transportation, within the meaning of the act, from one who is transported gratuitously.

■ Our chief concern in construing the foregoing section is to ascertain what is meant by the phrase "without payment" therein used, and not to define the term "guest". "Payment" as there appearing "is not to be considered in its restricted legal sense as the discharge in money of a sum due or the performance of a pecuniary obligation": *Albrecht v. Safeway Stores, Inc.*, 159 Or. 331, 80 P. (2d) 62. The nature of the payment contemplated by the statute is as variable as the particular facts involved. See: annotations, 82 A. L. R. 1365 and 95 A. L. R. 1180; *McCann v. Hoffman*, 9 Cal.

(2d) 279, 70 P. (2d) 909; and *Albrecht v. Safeway Stores, Inc.,* supra.

In *Smith v. Pacific Truck Express,* 164 Or. 318, 100 P. (2d) 474, we held that this court was "committed to the view that a person who, in riding in the motor vehicle of another, confers a substantial benefit on the owner or operator of such vehicle is not a guest within the meaning of this enactment even though the person so carried also promotes his own convenience and advantage." The question therefore is: What constitutes a substantial benefit? The benefit accruing to or conferred upon the owner or operator must be tangible, direct and material: *Fuller v. Tucker,* 4 Wash. (2d) 426, 103 P. (2d) 1086; *Swinney v. Roler,* 113 Ind. App. 367, 47 N. E. (2d) 846; *Knutson v. Lurie,* 217 Iowa 192, 251 N. W. 147; *Albrecht v. Safeway Stores, Inc.,* supra.

■■ The supreme court of the state of Washington has adopted the rule that in order to take out the guest category one who rides in the motor vehicle of another, "two requirements are necessary: (1) an actual or potential benefit in a material or business sense resulting or to result to the owner, and (2) that the transportation be motivated by the expectation of such benefit": *Fuller v. Tucker,* supra; *Syverson v. Berg,* 194 Wash. 86, 77 P. (2d) 382.

We are of the opinion that the foregoing construction of the term "payment" as applied to guest statutes is correct and is supported by the great weight of authority. According to that construction, when the only relationship between the occupant and the owner or driver of the car is a social one, that of hospitality, companionship or the like, any incidental courtesy emanating from the one transported by the owner or driver is "simply . . . an expression of apprecia-

tion that a guest often evinces": *Eubanks v. Kielsmeier*, 171 Wash. 484, 18 P. (2d) 48; *Van Auker v. Steckley's Hybrid Seed Corn Co.*, 143 Neb. 24, 8 N. W. (2d) 451; *Snyder v. Milligan*, 52 Ohio App. 185, 3 N. E. (2d) 633. One riding in a motor vehicle at the invitation of the owner or operator "does not become a passenger merely because he may perform some incidental voluntary service en route": *Yates v. J. H. Krumlinde & Co.*, 22 Cal. App. (2d) 387, 71 P. (2d) 298.

■ Upon consideration of the entire evidence in the light most favorable to the plaintiff, we are of the opinion that the assistance which the plaintiff rendered the defendant in helping him lift the gear into and out of the automobile was not a substantial benefit to the defendant in a material or business sense; and that the expectation of such act of the plaintiff was not the defendant's reason for inviting the plaintiff to drive to the beach, nor was it the plaintiff's purpose in accompanying the defendant.

The plaintiff relies strongly upon *Albrecht v. Safeway Stores, Inc.*, supra, and *Smith v. Pacific Truck Express*, supra. In the former case one Howard was the district manager of the defendant company and it was necessary for him to make a trip from Baker to Burns to inspect there one of the company's stores. On November 15, 1935, Howard requested Albrecht to go with him to Burns, stating to him that he wanted him to go along to help drive the automobile. The highway was extremely slippery, covered with a thin coating of ice and snow. The plaintiff at first refused to go, but upon the insistence of Howard that he might need some help on the trip and that his wife did not want him to make the drive alone, the plaintiff finally agreed to go with him. On the return trip the plaintiff

helped Howard to load sacks of salt into the car. He also drove about forty miles of the distance while Howard slept. After Howard resumed driving the accident occurred that caused the injury for which recovery was therein sought. This court, in upholding the verdict of the jury in favor of the plaintiff, observed:

"In the instant case it is believed, however,— although the question is close—the facts and circumstances viewed in the light most favorable to plaintiff, present a question of fact for the jury."

In *Smith v. Pacific Truck Express,* supra, Mrs. Smith, the plaintiff, was a representative of the American Railway Express agency at Bay City. On the day of the accident she rode on the defendant company's truck from her office to the dock, a distance of about two-fifths of a mile, and there assisted the defendant's employee in identifying and receipting for certain express shipments. The defendant was required to deliver mail to the post office at Tillamook by four o'clock in the afternoon, and there was evidence that on the day of the accident its truck was late. It was on the return ride from the dock to her office that the plaintiff was injured. This court held that there was sufficient evidence from which the jury might have found that the transportation of Mrs. Smith was a substantial benefit to the defendant.

The facts in the two cases last discussed are materially different from those in the case at bar, and for that reason we believe that the two former decisions are not applicable to the controversy now before us.

The defendant asserts that there is no evidence in the record from which the jury could find that the defendant was chargeable with gross negligence, and

that therefore his motion for a directed verdict should have been granted. According to the plaintiff's testimony there were "icy patches" on the pavement, and when the car was proceeding toward and about six or eight miles from the place of the accident it had skidded on the ice. The plaintiff also testified that he had many times on their trip warned the defendant that he was driving too fast and requested him to reduce the speed of the car; and that the defendant, each time, had slackened the speed and then shortly afterward resumed the rate of travel to which the plaintiff objected. There was evidence that at the time of the accident the defendant was driving at the rate of thirty-five or forty miles an hour, or even faster.

The ice at the place where the accident occurred, according to the plaintiff's testimony, covered the pavement for a distance of about one hundred feet. In describing the action of the car when it struck the ice, the plaintiff thus testified:

"A. Well, she [the car] flew around, she spinned around. All I know, I picked myself up on the ice.

"Q. How did you happen to be out on the ice?

"A. Well, the door or something must have went open. I don't know. I know I was out. The car door went open when she spun around, and it throwed me—oh, at least twenty feet or maybe better."

■ There was substantial evidence from which the jury could have found that the defendant was operating his car in a grossly negligent manner at the time of the accident: *Layman v. Heard,* 156 Or. 94, 66 P. (2d) 492; *Herzog v. Mittleman,* 155 Or. 624, 65 P. (2d) 384, 109 A. L. R. 662; *Storm v. Thompson,* 155 Or. 686, 64 P.

(2d) 1309. The trial court, therefore, did not err in denying the defendant's motion for a directed verdict.

Two of the other assignments of error relate to the exceptions taken to the court's instructing the jury that if it should find that the plaintiff was not a guest, he would be entitled to recover if he established ordinary negligence. In that respect the instructions were erroneous, inasmuch as the court should not have submitted to the jury the question of the plaintiff's possible status as a passenger in the defendant's car. The remaining assignments of error are without merit.

For the reasons hereinabove indicated, the judgment appealed from is reversed and the cause remanded for further proceedings not inconsistent with this opinion.