Argued June 3, reversed October 20, 1971

BOTTOM, *Appellant, v.* McCLAIN et al,
*Respondents.*
489 P2d 940

*Nick Chaivoe,* Portland, argued the cause for appellant. On the brief was Larry O. Gildea, Eugene.

*Paul D. Clayton,* Eugene, argued the cause for respondents. With him on the brief were Luvaas, Cobb, Richards & Fraser, Eugene.

BRYSON, J.

This is an action by plaintiff, a guest passenger, to recover damages for personal injuries she sustained in an automobile accident which occurred on Clear Lake Road, west of Eugene, Oregon. Defendants Sanford McClain and Lucy M. McClain were the parents of Neil E. McClain. The trial court granted a directed verdict in favor of Lucy M. McClain. Defendants Sanford McClain and Neil E. McClain moved for a directed verdict. The court was inclined to grant the motion, and plaintiff requested that the case be submitted to the jury. ORS 18.140(2). The jury returned a verdict for the plaintiff and against defendant Neil E. McClain and a judgment in favor of Sanford McClain. On motion, the trial court granted judgment in favor of defendant Neil E. McClain notwithstanding the verdict. The plaintiff appeals from that order. Neil

E. McClain is the only defendant involved in this appeal and will be referred to as the defendant.

Plaintiff asserts "[t]he sole question on appeal is whether there was sufficient evidence to enable the jury to find the defendant Neil E. McClain grossly negligent," and assigns as error the court's granting defendant's motion for a judgment notwithstanding a verdict.

Viewing the evidence in the light most favorable to the plaintiff, the jury could have found the following facts: At about 12:00 midnight, the defendant was driving his 1963 Corvette automobile on Clear Lake Road between Eugene, Oregon, and Fern Ridge lake. The plaintiff was seated to his right. Two other young people were seated behind the plaintiff and defendant in a "V-shaped compartment" where they were "cramped" and had to "hunch down." The weather was clear and visibility was good. A short distance before the curve on which the accident occurred there were informational signs indicating a curve ahead and a safe speed of 40 miles per hour. Defendant testified that he did not remember seeing the signs and "I believe I was going a little over 50-5." Passenger Greenough testified that the speed of the vehicle was in excess of 55 miles per hour prior to the accident. There was testimony that Greenough, a passenger in the back, had protested to the defendant prior to the accident about being thrown around.

"Q [Plaintiff's counsel] You testified you were being thrown around. * * * What did you do?

"A (Pause) Well, I'm not exactly sure. I believe that early we made minor protest. I became very upset later with the way driving was going; I became frightened. I made one, I'm sure I made, I said, 'Neil,' couple times, and finally said, 'Neil,

dam it,' and I believe he said, 'What's the problem?' However, I can't state that as a fact. And I said, 'We're being thrown around quite a bit back here.' And he said, 'I almost forgot you were back there.' After that I believe we were on a straight stretch leading to the corner. And my memory of entering the corner isn't that clear * * *.

"* * * * * *.

"Q * * * [W]ere you able to form any estimate of the speed with which Neil was driving before he entered that curve?

"A No, it's difficult to judge speed in a Corvette; that, and the fact that it was night. It's very difficult to judge.

"Q Do you have an opinion as to whether or not more or less than 55 miles per hour?

"A It was definitely more."

On cross-examination Greenough testified:

"Q [Defendant's counsel] Well, what I'm saying is, you were being thrown around in the back end, but you don't know how he was driving?

"A I couldn't describe like specific speeds, or I could not describe it in detail.

"Q All right. Actually, you were the only one that said something to him about slowing down, isn't this right?

"A As I recall it.

"Q All right. And, as a matter of fact, he did slow down when you said this to him, didn't he?

"A (Pause) This, again, would be difficult for me to judge if it was reduction of speed it wasn't really that apparent to me. I did notice that I wasn't bounced around in the back quite as much."

Thereafter, the car proceeded along a straight stretch of the road prior to the curve where the accident occurred.

None of the four persons in the vehicle could testify clearly as to the exact events of the accident. A fair reading of the testimony and exhibits would indicate the following: The road at the relevant point is 21'6" in width with gravel shoulders of six feet on the right and nine feet on the left. The vehicle entered the curve, described by the investigating officer as a "sweeping curve that comes off the apex with legs at 90 degrees angle from one another," and began a driving skid about halfway through the curve. The skid mark, thus caused, continued in a curve to a point where it crossed the center line in the road and then curved back to a point where it contacted the gravel shoulder on the right-hand side of the road. The skid measured 246 feet. The right front tire of the car hit the gravel shoulder on the right side of the roadway at a point about three-fourths of the way through the curve, throwing the car out of control. The vehicle was traveling, by this time, in a northerly direction.

The vehicle skidded 21 feet in the gravel shoulder and then spun across the road to a point where the rear of the car struck a highway delineator and culvert on the left side of the road, as viewed from the south. The first point of impact was 122 feet from where the car had re-entered the road after leaving the shoulder on the right. After the first impact, the vehicle spun around, traveled another 57 feet to a point where its left front fender struck a power pole, and came to rest.

Defendant testified that his vehicle had a propensity to "oversteer" at both high and low speeds, and that he attributed loss of control to oversteering into the right side of the road after negotiating the greater part of the curve. "Oversteer" was ex-

plained as a tendency of the back end catching up with the front end. The investigating officer testified that he had successfully rounded the curve in excess of 70 miles per hour during an emergency run.

In *Williamson v. McKenna*, 223 Or 366, 354 P2d 56 (1960), this court made an enlightened effort to "provide the clearest possible formula for the treatment of this class of cases so as to provide a workable guide for the bar and the trial bench." 223 Or at 371. Nevertheless, this appeal again involves the problem, frequently presented to this court, of passing on the sufficiency of evidence going to establish "gross negligence" in guest-passenger cases. The law now makes it clear that in guest-passenger cases the sufficiency of evidence going to the proof of "gross negligence" is reviewable by this court. *Williamson v. McKenna, supra* at 392-93.

The many cases discussing the problem are too extensive to cite in full, but *Williamson, supra,* is generally considered the anchor case with a comprehensive analysis of gross negligence in Oregon. ORS 30.110 was repealed and replaced by ORS 30.115 to reflect the *Williamson* language regarding gross negligence. ORS 30.115(2) reads:

"'Gross negligence' refers to negligence which is materially greater than the mere absence of reasonable care under the circumstances, and which is characterized by conscious indifference to or reckless disregard of the rights of others."

In a number of Oregon cases it has been said that "gross negligence" encompasses a state of mind indicative of an indifference to the probable consequences of one's acts. *McNabb v. DeLaunay et al,* 223 Or 468, 354 P2d 290 (1960); *Honeywell, Admx. v. Tur-*

*ner et al,* 214 Or 700, 332 P2d 638 (1958); *Carlson v. Wagberg,* 183 Or 95, 190 P2d 926 (1948); *Rauch v. Stecklein,* 142 Or 286, 20 P2d 387 (1933).

"Gross negligence" has also been typified as the result of an "I don't care what happens" attitude. *Williamson v. McKenna, supra; Chard v. Rios,* 238 Or 74, 393 P2d 156 (1964); *Burghardt v. Olson,* 223 Or 155, 349 P2d 792, 354 P2d 871 (1960); *Turner, Adm'r, v. McCready et al,* 190 Or 28, 222 P2d 1010 (1950).

This case, wherein the accident occurred on a curve, resembles, in many respects, the case of *Burghardt v. Olson, supra.* In that case, the host driver was found to have been driving at 65 miles per hour along a road with a posted safe speed of 45 miles per hour. The vehicle successfully negotiated a curve in the road and then, for some unknown reason, went out of control, crossed the four-foot shoulder, went across a ditch, traveled 113 feet and struck a telephone pole, traveled another 84 feet and came to rest upside down. In reversing a judgment for the plaintiff, the court stated that defendant's violation of ORS 483.102 (the basic speed rule) would establish only ordinary negligence without evidence of other recklessness. The vehicle had successfully rounded the curve before trouble arose. In order to support a finding of gross negligence, this court stated that:

"* * * the guest must point to something in the record which shows that it establishes upon the part of the host more than ordinary negligence. It must give an inkling of willfullness, foolhardiness, disregard of warnings, an abandonment to revelry or the adoption of an attitude of 'I don't care what happens.' If the guest's evidence establishes nothing of that kind and can go no further than to show that his host's driving was of the kind which the

courts regarded in the past as nothing more than ordinary negligence, his case must fail for he has not discharged the burden of proof." 223 Or at 170.

However, in *Burghardt* there was no protest by a passenger, alerting the driver to the alarm of the passenger, which was disregarded by the driver.

Plaintiff asserts that "[a] series or combination of negligent acts may constitute reckless conduct if taken together they indicate a reckless state of mind," and it is not necessary to show two or more negligent acts. "Evidence of excessive speed, lack of control, etc., alone, can amount to proof of gross negligence." Relying on *State v. Betts,* 235 Or 127, 384 P2d 198 (1963); *Williamson v. McKenna, supra* at 400; and *Turner v. McCready, supra.*

In *State v. Betts, supra,* a criminal case, the defendant-appellant contended "* * * 'The State was required to establish more than one negligent act committed under such circumstances as to constitute gross negligence,' * * *." At page 132 we stated:

> "* * * However, neither that decision nor any other decision holds that in order to prove gross negligence there must be proof of two or more negligent acts. Evidence of excessive speed, lack of control, etc., alone, *under certain circumstances can* amount to proof of gross negligence." 235 Or at 132. (Emphasis added.)

In *Turner, Adm'r, v. McCready et al, supra* at 54, 55, this court stated:

> "* * * But, we also recognize that the decision in each case must depend upon the particular facts of that particular case. * * * The question briefly stated, is whether the operation of the automobile indicated a mind indifferent to the rights of others, or having those rash qualities exhibited by the

foolhardy, or having an 'I don't care what happens' attitude * * *.' "

In *Williamson v. McKenna, supra* at 400, it is stated:

"* * * In Turner v. McCready, supra, this court recognized that a combination of negligent acts may be sufficient to make out a case of gross negligence. See also, Burrows v. Nash, 199 Or 114, 259 P2d 110 (1953). The principle was more specifically delineated in Gonzalez v. Curtis, 217 Or 561, 563-4, 339 P2d 713 (1959) where the court said:

'The plaintiff argues that the defendant-driver was guilty of several acts of ordinary negligence and, therefore, this combination of acts presents a jury question; citing Burrows v. Nash, supra. It should be pointed out, in this connection, that, although it may be shown that the occurrence was preceded by several acts of ordinary negligence, it is only when all of these acts combined with the existing circumstances show a foolhardy attitude on the part of the driver that gross negligence has been established. Glascock v. Anderson, 198 Or 499, 257 P2d 617; Keefer v. Givens, supra; Turner v. McCready, supra.' "

We believe this is the correct principle of law in respect to this contention. We hold that when the evidence indicates that the speed of the vehicle is so excessive that the driver cannot negotiate a curve and instead loses control and skids 246 feet and strikes a power pole, inflicting injury to the car occupants, then the driver is guilty of gross negligence. This is particularly true in this case where the driver knew of the oncoming curve, and the police officer had successfully rounded the same curve at 70 miles per hour.

Knowledge on the part of the defendant driver that injury to a guest would probably result from the

excessive speed or manner with which the driver was operating the vehicle has been frequently based upon warnings or remonstrations on the part of a guest. *See* 6 ALR3d 769, 787.

■ We conclude there is evidence in this case, including the protest of Greenough, from which the jury could have found that defendant's driving, as a whole, would be characterized as "conscious indifference to or reckless disregard of the rights of others." ORS 30.115(2).

The judgment notwithstanding the verdict is reversed with instructions to reinstate the judgment based upon the jury's verdict.