Argued January 11, affirmed May 13, petition for
rehearing denied June 12, 1973

SHERMAN, *Respondent, v.* McALLISTER,
*Appellant.*
509 P2d 1176

*Jack L. Mattison,* Eugene, argued the cause for appellant. On the briefs were Jaqua, Wheatley & Gardner, Eugene.

*William M. Collver,* Coos Bay, argued the cause for respondent. On the brief were McInturff, Thom, Collver & Rossi, Coos Bay.

BRYSON, J.

Plaintiff filed this action to recover damages for personal injuries suffered in a one-car automobile accident. The defendant was the driver of the automobile and plaintiff was a guest passenger. Plaintiff alleged that defendant was guilty of gross negligence in causing the accident. The trial court denied defendant's motion for a directed verdict. The jury returned a verdict for plaintiff, and defendant appeals.

The sole assignment of error is that the court erred in denying defendant's motion for a directed verdict. Defendant contends that the evidence was insufficient as a matter of law to raise a jury question on the issue of gross negligence.

The evidence, viewed most favorably for plaintiff, is as follows. Plaintiff and the defendant were friends. On the morning of November 7, 1969, a Mr. Frank Desirey, plaintiff and defendant met at defendant's home in North Bend, Coos County, Oregon. Mr. Desirey and defendant were to help plaintiff move into a house in Coos Bay. However, Mr. Desirey received a call to go to work.

The accident occurred about 12 noon on Cape Arago Highway, a two-lane blacktop road with gravel shoulders. Defendant was driving plaintiff and Mr. Desirey in her car, a Dodge Charger with a 440 cubic inch engine which she had purchased about three months previously. They were proceeding north on Cape Arago Highway toward Mr. Desirey's place of employment. The road was straight and there was no other traffic. The posted speed was 40 miles per hour. It was raining lightly at the time of the accident.

Defendant came to a full stop as she entered Cape Arago Highway and checked for traffic in both directions. Plaintiff testified that defendant started the car in first gear and quickly released the clutch, causing the rear tires to spin and to throw gravel from beneath them. The defendant shifted into second gear and quickly released the clutch, again causing the rear tires to spin, and the car fishtailed slightly; the third shift was a repetition of the second shift. Plaintiff said, "Sidney, would you please slow down, the pavement is wet and slippery." The defendant replied, "I have wide oval tires and they hold the pavement like tiger paws." Defendant then shifted into fourth gear, once again spinning the rear tires, causing the car to fishtail. The right rear tire slid onto the graveled shoulder of the road, causing the car to turn to the left and slide sideways on the slick pavement. The car slid in this position for a distance of approximately 350 feet, crashed into a mailbox and telephone pole, and overturned. The car had traveled approximately 950 feet on Cape Arago Highway before it started to slide sideways. Plaintiff stated that just before the crash she glanced at the speedometer and saw that it registered 65 miles per hour. Defendant had nothing to drink during the morning and was not angry or

disturbed about anything. Plaintiff further testified that there was nothing unusual or uncautious about defendant's driving before she stopped at Cape Arago Highway prior to the accident. Plaintiff described defendant's driving from the time she entered Cape Arago Highway as a series of "speed shifts" at a high rate of speed with the motor racing, and that this occurred on a wet, slippery asphalt roadway, causing the car to "fishtail."

The Oregon guest passenger statute, ORS 30.115, states in part:

"No person transported by the owner or operator of a motor vehicle * * * as his guest without payment for such transportation, shall have a cause of action for damages against the owner or operator for injury, death or loss, in case of accident, unless the accident was intentional on the part of the owner or operator or caused by his gross negligence or intoxication. As used in this section:

"* * * * *.

"(2) 'Gross negligence' refers to negligence which is materially greater than the mere absence of reasonable care under the circumstances, and which is characterized by conscious indifference to or reckless disregard of the rights of others."

In *Williamson v. McKenna*, 223 Or 366, 354 P2d 56 (1960), this court equated "gross negligence" with the concept of "reckless disregard of the rights of others" as defined in 2 Restatement (Second) of Torts § 500 (1965), which provides:

"The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such

risk is substantially greater than that which is necessary to make his conduct negligent."[1]

The concept is further explained in W. Prosser, Law of Torts § 34 (4th ed 1971) at 185:

"The usual meaning assigned to 'wilful,' 'wanton' or 'reckless,' according to taste as to the word used, is that the actor has intentionally done an act of an unreasonable character in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. * * *"

Reckless conduct involves serious danger.

"* * * It must not only be unreasonable, but it must involve a risk of harm to others substantially in excess of that necessary to make the conduct negligent. It must involve an easily perceptible danger of death or substantial physical harm, and the probability that it will so result must be substantially greater than is required for ordinary negligence." 2 Restatement (Second) of Torts § 500, Comment a (1965).

In the instant case, the jury could have found the defendant was driving too fast, knew that the road was wet and slippery, and that the rapid shifts at a high rate of speed under the existing circumstances would cause the car to lose its traction and the right rear wheel to go off the highway; that defendant could have made the shift from third gear to fourth gear at a lesser speed without spinning the rear wheels or "fishtailing" after she had been warned to "slow down."

---

[1] See 3 Restatement (Second) Torts Appendix, § 500, Reporter's Notes (1966). "No change in substance is intended."

Defendant contends that this case can be distinguished on the facts from *Bottom v. McClain,* 260 Or 186, 489 P2d 940 (1971). It is probably fair to say that each guest passenger case can be distinguished in some manner on the facts from every other guest passenger case. The point made in *Bottom, supra,* was that the driver had been warned prior to the accident as to the reckless manner in which he was driving and this warning was evidence of the driver's knowledge that his acts in so driving contained a risk of harm to others and that his conduct involved a risk substantially greater in amount than that which constitutes negligent conduct.

■ Actual awareness of the extreme risk may be revealed by express warnings of the dangerous situation by a guest. *Williamson v. McKenna, supra* at 399; *Bottom v. McClain, supra* at 194-95. *Cf. Melcher v. Adams,* 174 Or 75, 85, 146 P2d 354 (1944).

Defendant urges that plaintiff's protest be disregarded because it was "made within such a short time of the accident, and the defendant had little or no opportunity to reflect upon it and take appropriate action." If plaintiff had not responded to the defendant's protest by saying, "I have wide oval tires and they hold the pavement like tiger paws," we might agree.

■ When the defendant moved for a directed verdict, the trial court considered the evidence presented and the trial briefs of counsel and stated, "I am not saying that the facts in that case [*Bottom, supra*] conform to this exactly, but it seems to me there is a jury question here." Viewing the evidence most favorable to the plaintiff, we agree that there was substantial

evidence from which the jury could draw inferences that defendant's conduct was not only unreasonable, but involved "an easily perceptible danger of death or substantial physical harm, and that the probability that it [would] so result [was] substantially greater than is required for ordinary negligence," thus fully satisfying the requirements of the test as stated in 2 Restatement (Second) of Torts § 500, including Comment *a*, and as adopted by this court in *Williamson v. McKenna, supra.*

Affirmed.

McALLISTER, J., dissenting.

In my opinion the evidence is not sufficient to support a finding of gross negligence. I therefore dissent.

O'CONNELL, C. J., joins in this dissent.