Argued June 6, 1978, affirmed April 3, 1979

WOOTTEN, *Respondent,*
*v.*
DILLARD, *Appellant.*
(No. TC A7602 01683, SC 25239)
592 P2d 1021

A. Thomas Cavanaugh, Portland, argued the cause for appellant. With him on the briefs were Richard C. Pearce and A. Thomas Cavanaugh, P. C., Portland.

Eric C. Larson, of Larson & Sharp, Gresham, argued the cause and filed a brief for respondent.

LENT, J.

**LENT, J.**

This is an action for damages for personal injuries brought by a guest against his host driver. Defendant appeals from a judgment on a jury verdict for plaintiff. The primary issue is whether there is evidence from which the jury could find that plaintiff's injuries resulted from gross negligence on the part of the defendant. We find there is and affirm.

For some 18 years now the parties and the courts have been wont, in cases governed by the guest passenger law, to commence analysis with *Williamson v. McKenna*, 223 Or 366, 354 P2d 56 (1960). Whenever this court (or the trial court) decides a close case against the host, the court is accused of not being true to the precepts of *Williamson.* We believe it is of some value, therefore, to examine just what that case requires of judges and juries.

The facts in *Williamson* were governed by what was then ORS 30.110:

> "No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against the owner or operator for injury, death or loss, in case of accident, unless the accident was intentional on the part of the owner or operator or caused by his gross negligence or intoxication or his reckless disregard of the rights of others."

After reviewing quite comprehensively an array of cases construing similar statutes and our own, this court rejected the concept that "gross negligence" could be identified as a separate form of conduct from that of "recklessness," which was equated with the statutory language, "reckless disregard of the rights of others."[1] The opinion stated that the concept of recklessness:

---

[1] This writer, speaking only for himself, has had some questions concerning some aspects of *Williamson v. McKenna.* The opinion makes no reference to *State v. Wilcox,* 216 Or 110, 337 P2d 797 (1959) decided just 15 months earlier holding that under the negligent homicide law "gross

"can be *roughly isolated* by us and by the trial judges and juries in the administration of the guest statute." (emphasis added)

The court went on in *Williamson* to delineate the elements of recklessness by "adopt[ing]" the definition of "reckless disregard of the safety of another"[2] found in 2 Restatement, Torts, § 500.[3]

Following the decision in *Williamson*, the legislature in 1961 repealed ORS 30.110, the guest passenger law construed in that case, and enacted in its stead what is now codified as ORS 30.115:

"No person transported by the owner or operator of a motor vehicle, * * * as his guest without payment for such transportation, shall have a cause of action for damages against the owner or operator for injury, death or loss, in case of accident, unless the accident

---

negligence" meant something other than recklessness. A fair reading of *Wilcox* will disclose that the court found "gross negligence" to be a lesser form of misconduct than recklessness. Both opinions were authored by the same member of the court, and the author had *Wilcox* in mind as late as the writing of his concurring opinion in *Burghardt v. Olson,* 223 Or 155, 349 P2d 792, 354 P2d 871 (1960) handed down in February, 1960. Yet in *Williamson* after examining the gamut of misconduct "ranging in infinite gradations from the slightest inadvertence to the most malicious purpose to inflict injury" the opinion finds "there is no place in the plan for gross negligence." 223 Or at 373.

[2] Again speaking for himself alone, this writer is troubled by matters *not discussed* in *Williamson.* The opinion does not discuss whether there is any difference between the statutory "rights of" others and the Restatement "safety of" another. The opinion assumes there is no difference. Neither does the opinion discuss the fact that 2 Restatement, Torts, § 500, dealt only with "bodily harm." Perhaps that is only natural, for *Williamson* concerned a claim for damages for personal injuries. On the other hand the guest passenger law was not confined to such claims, and the "adoption" of § 500 may have been overly broad. That the Restatement authors are conscious of adopting rules which may be applicable to instances both of harm to person *and* property appears, for example, from 2 Restatement (Second), Torts, § 402A, which specifically provides a rule of liability for harm to person and property.

[3] In 2 Restatement (Second), Torts, § 500, the text has been changed, but the Reporter's Notes state this was for the purpose of "clarity" and no change in substance was intended. *See, also Lawhead v. Woodpecker Truck, Equip.,* 267 Or 383, 388 n. 1, 517 P2d 283 (1973). Whether the change in language did work a change in substance we need not decide in this case.

[132]

was intentional on the part of the owner or operator or caused by his gross negligence or intoxication. As used in this section:

"* * * * *

"(2) 'Gross negligence' refers to negligence which is materially greater than the mere absence of reasonable care under the circumstances, and which is characterized by conscious indifference to or reckless disregard of the rights of others."

There has been little discussion in our cases since that time as to whether the enactment of ORS 30.115 had any effect on the adoption of § 500. *Gray v. Galantha*, 235 Or 521, 385 P2d 746 (1963), apparently involved facts occurring prior to the enactment of ORS 30.115. The opinion assumes without discussion that "gross negligence" has the same meaning under both ORS 30.110 and 30.115. *Chard v. Rios*, 238 Or 74, 393 P2d 156 (1964) involved facts which occurred after the effective date of ORS 30.115, and the opinion erroneously states:

"* * * That decision *[Williamson]* gave to the term 'gross negligence,' as it occurs in ORS 30.115, the meaning found in § 500, Restatement of the Law of Torts. * * *" 238 Or at 77.

Disregarding the error in identification of the statute number, we read the opinion to assume, again without discussion, that the statutory change worked no variation in meaning. *Bottom v. McClain*, 260 Or 186, 489 P2d 940 (1971), without discussion, expressly states that the change in statute did not change the rule of *Williamson*.

"The many cases discussing the problem [sufficiency of the evidence to establish gross negligence] are too extensive to cite in full, but *Williamson, supra,* is generally considered the anchor case with a comprehensive analysis of gross negligence in Oregon. ORS 30.110 was repealed and replaced by ORS 30.115 to reflect the *Williamson* language regarding gross negligence. * * *" 260 Or at 191.

Since we have not had the benefit of any adversarial briefing to the contrary, therefore, we shall continue

to assume that the Restatement definition of reckless disregard of the safety of another applies to determination by judge or jury of the existence under the evidence of gross negligence on the part of the host in a case involving a claim for damages for personal injuries.

In these cases the host invariably contends that *Williamson* has established some knife-edge which may be precisely used to separate out those cases which should be taken from the jury. As a majority of this court quite recently recognized, that just is not so. *Bogue v. McKibben,* 278 Or 483, 489, 564 P2d 1031 (1977):

> "The dissent describes the majority as getting 'back in the business of tinkering with what constitutes gross negligence' and concludes 'that *Williamson,* as subsequently interpreted, is dead * * *'
>
> "*Williamson v. McKenna, supra,* was a herculean effort to settle the issue herein discussed and remains a bellwether case. Whenever this court must determine what facts constitute a reasonable man's reckless disregard of the safety of others, *there will occasionally be a grey area of difficulty. * * *'
>
> "* * * * *
>
> "No two cases are alike. The majority does not overrule *Williamson* wherein this court adopted * * * § 500 * * *. We regard this opinion as a proper application of the rule * * *" (emphasis added)

*Williamson,* itself, acknowledges there is no such knife-edge. First, as we have already noted in a quotation, the concept of recklessness may only be "roughly isolated" by judge and jury; moreover,

> "* * * Since we are dealing here with a question of the quantum of fault it is obvious that we cannot expect to find a rule or standard that can be applied with any precision; the most that we can hope for is a clear statement of the factors or elements which must characterize the host's conduct in order to permit recovery." *Williamson v. McKenna, supra,* 223 Or at 372.

[134]

Speaking just two months before *Bogue v. McKibben, supra,* a unanimous court through the same author as in *Bogue,* but deciding in favor of the host's contention that the evidence was insufficient, reaffirmed our allegiance to *Williamson.*

> "The elements of gross negligence under the statute have been discussed at length in two prior opinions, *Bottom v. McClain,* 260 Or 186, 489 P2d 940 (1971), and *Williamson v. McKenna,* 223 Or 336 [sic] 354 P2d 56 (1960). Nothing is to be gained by repeating those discussions here. We note only that in order to show gross negligence it is incumbent upon the plaintiff to prove that defendant's conduct, when measured objectively, reveals 'a state of mind indicative of an indifference to the probable consequences of one's acts.' This state of mind has been described as an 'I don't care what happens' attitude. *Bottom v. McClain, supra,* at 191-92. * * *" *Hill v. Garner,* 277 Or 641, 646, 561 P2d 1016 (1977).

Defendant assigns as error the failure to grant his motions for nonsuit and directed verdict. Both assignments raise the issue of whether there is evidence from which the jury should be permitted to find that the defendant operated his vehicle in a grossly negligent manner and thereby injured plaintiff.

Defendant asserts that in deciding this issue the court is required to make a two step analysis. He contends that the court must first determine whether the evidence is of a quality which will permit a finding of gross negligence under the statute, and if so, whether the quantum of evidence is sufficient to cause reasonable minds to differ as to the ultimate facts established by the evidence. Attempting to clarify these contentions he states:

> "* * * The courts administer the law and the jury determines fact from evidence. Before the jury may receive the evidence for their consideration, the court must evaluate the evidence as to legal merit framed by the issues. The court must decide whether the correct type of evidence exists upon which the jury is entitled to act. A tremendously important concept of American jurisprudence is lost if we adopt a line of

reasoning that any conflict in evidence creates a jury question and the prevailing party is entitled on appeal to all favorable implications from the evidence."

We agree with defendant that a jury question is not necessarily created by just any conflict in evidence, but we further respond that the prevailing party in this action at law is most definitely entitled on appeal to all favorable inferences ["implications"?] which may be drawn from the evidence and further that all conflicts in the evidence are deemed to have been resolved in favor of the prevailing party. See, for example, *Shepler v. Weyerhaeuser Company*, 279 Or 477, 484, 569 P2d 1040 (1977). We agree that the court has the function of deciding whether there is evidence upon which the jury is entitled to act. That is not to say, however, that the court must be persuaded that the host was grossly negligent. We might be completely unpersuaded were it our function to weigh the evidence, but we are yet compelled to submit the case if there is evidence from which reasonable minds could conclude that the host has acted with reckless disregard of the rights or safety of his guest and thereby injured him.

We conclude that we are unconcerned with the quantum of evidence. Our concern is only with the existence of evidence which, if accepted as being true by the trier of fact, would establish that the host is liable under the statutory limitations upon the right of the guest to recover. We make this determination in accordance with the rules established by the cases already cited and cases cited with approval in those cases.

From the evidence the jury could have found the following facts. On April 12, 1975, at about 7:30 p.m., the defendant and four of his high school friends happened to meet at the drag races in north Portland's Delta Park. The friends were the plaintiff, Jacqueline Smith (since married to plaintiff), Neal Blake and

Diana Hawkes (since married to Neal Blake). All five left the races and returned to Gresham (the area in which they lived) in plaintiff's vehicle. Someplace en route they all decided to drive up on Larch Mountain. They left plaintiff's vehicle at plaintiff's apartment and from then on traveled in defendant's 1973 Jeep CJ5. The Jeep was equipped with over-sized tires which caused it to sit taller than an average car; it had a 304 cubic inches V-8 engine; it was a four-wheel drive vehicle with a three-speed manual transmission.

They first proceeded to a restaurant in the Gresham area where they stopped for about one-half hour. They left the restaurant with defendant driving and Diana Hawkes sitting on a "bench" in the front seat between the driver and passenger side. Neal Blake occupied the front passenger seat. Plaintiff and Jacqueline Smith were in the rear seat.

About two miles from the restaurant they thought they saw a friend and his girl drive into a subdivision under construction. They attempted to follow that car and eventually came to a stop in a cul-de-sac. Defendant had to back out of the cul-de-sac. When he put the Jeep in forward motion, the wheels were cramped. He "popped" his clutch and as a result of that action and the wheels being cramped, the Jeep leaned to one side so as to cause the other to come up off the ground. Neal Blake found this to be "scary" and told defendant to "knock it off."

Following that incident, defendant drove several miles in an unremarkable manner on the old Columbia River scenic highway towards Corbett and Larch Mountain. As the vehicle approached a left curve, defendant was "going pretty fast." The right wheels of the Jeep got off the pavement and onto the gravel shoulder but defendant successfully brought the vehicle onto the pavement without skidding or fishtailing. Again, Neal Blake told him to "just be careful" and "knock it off" because Blake found the experience to be "scary."

[137]

They drove on to Corbett where they stopped and visited with some other people. They then resumed driving on the scenic highway. This road was described as having "sweeping curves" and by defendant as "a road with many corners on it," a couple of which were sharp corners.

As the vehicle approached the scene where it rolled over, it had to negotiate a left hand curve, approximately a quarter mile of straight of way, and a right curve which is the place where the roll over occurred. It was by now about 11:30 p.m.

Defendant drove through the left hand curve in a manner which Neal Blake described as being "pretty fast" and "real fast." Blake asked defendant to slow down because the maneuver "scared" Blake. Blake thought defendant was "going a little bit faster" than Blake thought he should. Defendant responded to the effect that he liked the way his Jeep was handling. Defendant testified that he took this left curve at about 40 miles per hour. There is no evidence that defendant knew of the fact, but for traffic proceeding in the opposite direction approaching that curve there was a sign suggesting a speed of 20 miles per hour for the curve.

As defendant proceeded down the straight of way approaching the right hand curve where the roll over occurred, there was a sign suggesting 30 miles per hour for that curve. There is no evidence that defendant saw that sign. As defendant proceeded down the straight of way, he accelerated his speed and Diana Hawkes testified that she looked at the speedometer because "It felt like we were going fast, and it scared me, because he was coming around the other corner pretty fast." She testified the speedometer registered between 50 and 60 miles per hour. As the Jeep commenced to negotiate the right hand curve it seemed to Neal Blake that the vehicle was going "quite fast" and "on the corner right where the curve started at the border line" between the straight of way

[138]

and curve, Blake again became scared, called defendant a vile name and asked him to slow down. Defendant had no opportunity to respond because at that point the Jeep went out of control, rolled over and caused the injuries for which plaintiff seeks damages in this case.

Defendant testified that between Corbett and the place where the Jeep rolled over he had no difficulty in negotiating the curves but the Jeep "felt top heavy" which is something he expected with the vehicle having five people in it. He testified that he slowed down as he went into the final curve:

> "Yes, I applied my brakes but—I applied them, and as I started into the corner, that is when the Jeep seemed to really shift. It was a tremendous weight shift, and that's when it flipped over."

On cross-examination defendant testified that a weight shift of this kind "rarely happened" before the night of the accident but he did recall two prior times in which he had experienced weight shifts in negotiating turns. Defendant conceded, however, that the incident which occurred in the subdivision made him realize that having five people in the Jeep would affect his ability to handle the Jeep.

■■ The evidence provides a picture of driving by the defendant in such a manner as to scare his front seat passenger to the point of protest on four separate occasions. It is true that two of these were followed by defendant's temporarily heeding the warnings, but then returning to the kind of conduct which evoked further warning or protest. As to the protest made by Blake at the next to last curve, what we had to say in *Sherman v. McAllister,* 265 Or 630, 509 P2d 1176 (1973) is apposite:

> "Defendant urges that plaintiff's protest be disregarded because it was 'made within such a short time of the accident, and the defendant had little or no opportunity to reflect upon it and take appropriate action.' If plaintiff [sic] had not responded to the defendant's [sic] protest by saying, 'I have wide oval

tires and they hold the pavement like tiger paws,' we might agree." 265 Or at 635.

Here in response to Blake's admonition, defendant considered it and rejected it because he was satisfied with his driving despite its effect upon his passenger. Warning given and ignored is evidence of a reckless state of mind, *Turner, Adm'r., v. McCready et al,* 190 Or 28, 54, 222 P2d 1010 (1950). *Turner* states this to be *direct* evidence of such a state of mind; whether it is direct evidence or not, it is certainly evidence sufficient to justify the jury in finding the requisite state of mind to satisfy the requirements of § 500 and, therefore, ORS 30.115. Incidentally, *Williamson* cites *Turner* with approval upon this point. *See, also, Bottom v. McClain, supra,* 260 Or at 194-95.

We find there was no error in submitting the case to the jury upon this record.

■ Defendant further assigns as error the failure to give the following requested instruction:

"If you find that a reasonable and prudent person as a guest passenger in an automobile under the circumstances then existing would have protested as to the manner in which the automobile was being driven and if you find that the person with knowledge of the manner in which the car was being operated and of the other conditions then and there existing failed to protest to the driver, then that person would be guilty of negligence in failing to so act.

"The protest required must be one made in a serious manner and understood as such by the driver as opposed to one made in a joshing or frivolous manner.

"It must be made in sufficient time before the act to enable the driver to reflect and act upon it."

to which exception was taken, as follows:

"MR. CAVANAUGH: Only to the Court's failure to give —

"THE COURT: 4A.

"MR. CAVANAUGH: —Defendant's Requested Instruction 4A as amended in the second paragraph suggested here.

"THE COURT: All right. I did not give 4A as amended. You may have your exception. Among other reasons, I believe it to be abstract, and I want you to know for the record why, in that it seems to suggest that negligence of a guest passenger can be imputed to the plaintiff or another passenger; and furthermore, there is no allegation in your Answer which seems to support this. But basically, I feel that it is abstract and may impose upon the plaintiff or impute to him negligence which cannot be imputed in law.

"MR. CAVANAUGH: But the reason, and I put this on record, is — because the Supreme Court is getting so darn touchy about these things. The reason I requested this instruction is because it seemed to me from the start that the plaintiff's case was going to be pegged around protest, and I think that an instruction on what a protest amounts to is appropriate, particularly in a case such as this.

"THE COURT: There is no —

"MR. CAVANAUGH: I think you understand.

"THE COURT: Yes, I do, And I want to make it clear, too, that a protest by a passenger alerting the driver of a motor vehicle to the alarm of the passenger, which was disregarded by the driver, certainly is a factor to consider as far as gross negligence is concerned. It is the form of this particular instruction which I feel to be improper, form and substance, excuse me."

Whether the first paragraph of the requested instruction is a correct statement of the law we need not decide. The requested instruction does not by its terms refer to the plaintiff. If it was meant to concern a charge of contributory negligence, the trial judge correctly refused to give it because the defendant in his affirmative defense does not allege that plaintiff was negligent in failing to protest. If the requested instruction was intended to support a charge of negligence against any other passenger, the trial judge was correct in rejecting it because there is nothing in the pleadings or the evidence to impute such negligence to the plaintiff.

The judgment is affirmed.

[141]